IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTO-OWNERS INSURANCE COMPANY, )
                                )
     Plaintiff,                 )
                                )
v.                              )     CIVIL ACTION FILE
                                )     NO. 1:10-CV-03019-SCJ
ROBERT ALSTON MINOR, et al.,    )
                                )
     Defendants.                )

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW AUTO-OWNERS INSURANCE COMPANY ("Auto-Owners"), Plaintiff in the above-styled action, and shows the following in support of its motion for summary judgment:

### STATEMENT OF FACTS

Despite the tremendous volume of supporting documents the parties have filed with the Court, the issues presented in Auto-Owners' motion for summary judgment are fairly straightforward. Charles E. Moore, Shelby A. Moore, and Turnbull Associates, LLLP[1] ("Turnbull Defendants"), among others, have been named as defendants in a lawsuit filed by Horace A. Minor, Christine Minor Williams, Rebecca Minor, John Keith Minor, Hulon L. Minor, and Louise J. Minor, individually or through executors of certain estates (collectively "Minor Family" or "Minor Defendants").

---

[1] Turnbull Associates, LLLP is a limited liability partnership created by Charles and Shelby Moore, as trustees of certain trusts.  (Turnbull 30(b)(6) Depo., pp. 7-9, 11-12.)

(Underlying Complaint, attached to Auto-Owners' Statement of Facts as Exhibit A.)  The lawsuit, filed in the Superior Court of Gwinnett County, seeks damages and other relief arising from the Turnbull Defendants' alleged contamination of the Minor Family's Property ("Underlying Lawsuit").  The Turnbull Defendants seek coverage for the claims asserted in the Underlying Lawsuit under consecutive commercial umbrella and executive umbrella insurance policies issued by Auto-Owners.  (See, generally, Affidavit of Chris Boice, on file with this Court.)

At all relevant times, the Turnbull Defendants owned real commercial property located at 4601 Satellite Blvd., Duluth, Georgia ("Turnbull Commercial Property" or "Turnbull Property").  (Moore Depo., pp. 10-11; Turnbull 30(b)(6) Depo., pp. 7-9, 11-12.)  The Turnbull Commercial Property contains a dry cleaning business which has been in operation at least since the time the Turnbull Defendants purchased the property.  (Moore Depo., pp. 10-11, 20-21, 24-25.)

The Turnbull Commercial Property sits adjacent to certain real residential property owned by the Minor Family, located at 2081 Hopkins Mill Road, Duluth, Georgia ("Minor Residential Property").  (Rebecca Minor Deposition, pp. 7-12.)  On April 17, 2009, the Minor Family brought suit against the Turnbull Defendants to seek damages and other relief arising from the

alleged proliferation of contaminants on their property.  (See Auto-Owners' Statement of Facts, Exhibit A.)  Specifically, the Minor Family alleges that the chemicals PCE, TCE, and cis-1,2-Dichloroethene, which originated from the Turnbull Commercial Property, seeped, migrated or were discharged onto their property, causing them damage.  (Id.)

The discovery of the contamination, however, predated the Underlying Lawsuit by many years.  In early 2005, Charles Moore contemplated selling the Turnbull Commercial Property.  (Turnbull 30(b)(6) Depo., pp. 45, 58.)  Because the property contained a dry cleaning business, Moore was obligated to commission testing of the property to ensure that any contamination of the property -- to the extent it existed at all -- was within legally permissible limits.  By August 1, 2005, at the latest, Moore learned that the Turnbull Property contained hazardous contamination.  (Turnbull 30(b)(6) Depo., p. 76-77; Exhibit 6.)

Moore notified the Georgia Environmental Protection Department ("EPD") of the contamination and, through Turnbull, undertook testing, monitoring and remediation efforts with respect to the Turnbull Property.  (Turnbull 30(b)(6) Depo., pp. 57-58, 77-78, 80-89.)  By November 2006, at the latest, Moore learned that contamination potentially arising from the Turnbull Property had been discovered on the adjacent Minor Family

Property, as well.  (Raymond Williams Deposition, p. 33.)

Despite Moore's knowledge of the contamination at both sites, Moore did not notify Auto-Owners until May 2008, years after the hazardous substances were discovered.  (Affidavit of Chris Boice, ¶ 6.)  Subsequently, on April 17, 2009, the Minor Family filed the Underlying Lawsuit.

After receiving late notice of the claim and notice of the Underlying Lawsuit, Auto-Owners issued reservation of rights letters to Moore and Turnbull, reserving its rights to contest coverage under the umbrella policies.  (Boice Affidavit, ¶¶ 8-9.) Auto-Owners also retained counsel to defend the Turnbull Defendants in the Underlying Lawsuit, subject to the complete reservation of rights.  (Boice Affidavit, ¶ 10.)

Auto-Owners then brought the instant declaratory judgment action seeking a declaration from this Court that no coverage is afforded under the umbrella policies for the claims asserted in the Underlying Lawsuit.  Both umbrella policies contain an absolute pollution exclusion, which excludes coverage for property damage arising from the discharge, dispersal, seepage, migration, escape or release of defined "pollutants".  Similarly, the pollution exclusion excludes coverage for any loss, cost or expense arising from a request, demand or order than an insured test for, monitor, clean up, remove, contain, treat, detoxify or

- 4 -

neutralize, or in any way respond to, or assess the effects of pollutants.  All of the claims asserted in the Underlying Lawsuit arise from the Minor Family's allegations that hazardous chemical contaminants migrated from the Turnbull Property and onto the Minor Property, causing damages, as well as the subsequent request that the contamination be tested and remediated.  These claims fall squarely within the pollution exclusion contained in both policies.  As a result, no coverage is afforded for the Turnbull Defendants.

In addition, the executive umbrella policy contains a "business property" exclusion, which excludes coverage for property damage arising from "business property".  Because the Turnbull Property is "business property" as that term is defined by the executive policy, and because all damages alleged in the Underlying Lawsuit arise therefrom, no coverage is afforded under the executive umbrella policy issued by Auto-Owners.

Lastly, both policies contain certain notice conditions precedent, requiring the insureds to provide notice "as soon as practicable" in the event of an occurrence or incident which may involve Auto-Owners.  Because Auto-Owners was not notified of the discovery of hazardous chemicals on the Turnbull and Moore properties until years after it was discovered, the Turnbull Defendants materially breached the unambiguous terms of the

policy.  As a result, Auto-Owners is relieved of any duty to defend or indemnify the Turnbull Defendants against the claims asserted in the Underlying Lawsuit.

For these reasons, more fully set forth below, Auto-Owners respectfully requests that this Court grant its motion for summary judgment.

<b><u>ARGUMENT AND CITATION OF AUTHORITY</u></b>

**I.   NO COVERAGE IS AFFORDED UNDER EITHER UMBRELLA POLICY BECAUSE ALL DAMAGES ALLEGED ARISE FROM THE PROLIFERATION OF POLLUTANTS.**

Both policies contain pollution exclusion provisions which are substantially identical.  Although set forth in their entireties in Plaintiff's statement of facts, the exclusions provide that no coverage is afforded for damages arising from the actual, alleged or threatened discharge, dispersal, release, escape, seepage or migration of pollutants; or from any loss, cost or expense arising out of any request, demand or order that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.  In this case, all claims set forth in the Underlying Lawsuit arise from the alleged presence of pollutants and the subsequent demand and order that the Turnbull Defendants test for and respond to the contamination.

Georgia courts considering pollution exclusions provisions to those at issue here have found them to be unambiguous and, as such, not open to construction or interpretation.  Owners Ins. Co. v. Farmer, 173 F. Supp.2d 1330 (N.D. Ga. 2001); North Georgia Petroleum Co. v. Federated Mut. Ins. Co., 68 F. Supp. 1321 (N.D.Ga. 1999); Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co., 231 Ga. App. 89, 498 S.E.2d 572 (1998); American States Ins. Co. v. Zippro Constr. Co., 216 Ga. App. 499, 455 S.E.2d 133 (1995). The Eleventh Circuit Court of Appeals, interpreting a pollution exclusion provision nearly identical to those contained here found the exclusion to be clear and unambiguous as a matter of law.  Owners Ins. Co. v. Lake Hills Homeowners Assoc., United States Court of Appeals for the Eleventh Circuit, December 30, 2002, p. 4 (Unpublished Opinion attached hereto as Exhibit "A").

Georgia courts enforce a well-established policy of adherence to contract language where the terms therein are clear and not susceptible to alternative meanings.  See, e.g., Owners Ins. Co. v. Farmer, 173 F. Supp.2d 1330 (N.D. Ga. 2001); North Georgia Petroleum Co. v. Federated Mut. Ins. Co., 68 F. Supp. 1321 (N.D.Ga. 1999); Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co., 231 Ga. App. 89, 498 S.E.2d 572 (1998).  Georgia courts have long held that "[t]he words used in policies of insurance, as in all contracts, bear their usual and common significance, and

policies of insurance are, as in all other contracts, to be construed in their ordinary meaning." <u>Truitt Oil</u>, 231 Ga. App. at 90 (citations omitted).  Since an unambiguous term requires no construction, "its plain terms must be given full effect even though they are beneficial to an insurer and detrimental to the insured." <u>Id</u>.

Here, the terms of the pollution exclusion exclude coverage for the damages sought by the Minor Family against the Turnbull Defendants arising from the alleged discharge, dispersal or release of dry cleaning chemicals from the Turnbull Commercial Property and onto the Minor Residential Property.  Likewise, the damages arise from a demand that the Turnbull Defendants test for and remediate the presence of chemicals on both properties.

**A.   No Coverage Is Afforded for the Discharge of Pollutants.**

The pollution exclusion reflected in the umbrella policies presents a three-step analysis to establish its application. First, that the chemicals at issue are defined "pollutants"; second, that they were discharged, dispersed, seeped, migrated, released or escaped; and third, that the discharge, dispersal or release occurred at or from a premises or location which was at any time owned by any insured.  Because each step can be satisfied in this case, the pollution exclusion in the Turnbull Defendants' policies applies.

- 8 -

1.   <u>The Dry Cleaning Chemical at Issue Are "Pollutants" as
     Defined by the Policies.</u>

Under the unambiguous terms of the policies at issue here, a
"pollutant" is defined as "any solid, liquid, gaseous or thermal
irritant or contaminant."  The sole question triggered when
resolving whether the chemicals identified by the Minors
constitute "pollutants" under the policies is to determine
whether they are solid, liquid, gaseous or thermal irritants or
contaminants.  Clearly, they are.

The Minors set forth in their Complaint that the chemicals
at issue - from which all of their claims arise - are PCE, TCE,
and cis-1,2-Dichloroethene.  (Underlying Complaint, ¶ 15.)  The
presence of these chemicals on both the Turnbull and Minor
Properties caused them to be placed on the Georgia EPD's
Hazardous Site Index.  (Turnbull 30(b)(6) Depo., pp. 78, 123-124;
Underlying Complaint, Exhibit F.)  The Minor Family further
alleges that due to the presence of the hazardous chemicals,
their property has been substantially devalued.  (Underlying
Complaint, ¶ 20.)

There can be no dispute that the dry cleaning solvents and
chemicals at issue in this case are pollutants as defined by the
umbrella policies issued by Auto-Owners.  Handling and disposing
of the chemicals is governed and overseen by the Georgia EPD,

which in and of itself indicates the hazardous, contaminating and irritating nature of the chemicals.  (Depo. of Hareen Patel, pp. 28-30.)  In fact, in a decision concerning the application of a similar pollution exclusion to the dispersal of dry cleaning solvents, as here, the Eleventh Circuit Court took for granted that the chemicals at issue were defined "pollutants" and focused instead on the "sudden and accidental" language in that policy, which is not at issue here.  See Southern Solvents, Inc. v. New Hampshire Ins. Co., 91 F.3d 102 (11th Cir. 1996).

If any doubt existed as to whether chemicals which the EDP categorizes as "hazardous substances" may be considered "pollutants" under the policies, the inclusion of the word "any" in the policies' definition of pollutant makes clear how broad the definition is.  A "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant".  The Eleventh Circuit Court has emphasized that "the adjective 'any' is not ambiguous; it has a well-established meaning."  Merritt v. Dillard Paper Company, 120 F.3d 1181, 1186 (11th Cir. 1997); see also, CBS, Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1223 (11th Cir. 2001); Coronado v. BankAtlantic Bancorp, Inc., 222 F.3d 1315, 1321-1322 (11th Cir. 2000).  "Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind."  United States v. Gonzales,

520 U.S. 1, 5, 117 S.Ct. 1032 (1997).

In the case at bar, the absolute pollution exclusion precludes coverage for <u>any</u> liquid irritant or contaminant. It cannot reasonably be suggested that the chemicals at issue in the Underlying Lawsuit are not liquid contaminants. The mere potential presence of these chemicals triggers a heightened testing standard enforced by the Georgia EPD before the sale of any property involving a dry cleaning business. (Turnbull 30(b)(6) Depo., p. 54.) Moreover, it cannot be reasonably argued that the presence of these chemicals - in sufficient enough amounts to cause the Turnbull Property to be placed on the EPD's Hazardous Site Index - did not have an irritating or contaminating effect. Importantly, the Minor Family alleges that the mere presence of these chemicals on their property was so damaging as to devalue their property. (Underlying Complaint, ¶ 20.) Concerns regarding the contaminating effect of the chemicals caused Turnbull to spend in excess of $200,000 to remediate the contamination. (Turnbull 30(b)(6) Depo., pp. 87-88.)

Repeatedly, the courts have held that a pollutant need not be specifically identified in order to fall within the pollution exclusion provision. In fact, a number of "pollutants" have been identified, though not specifically named in the policy. <u>Lake</u>

Hills, supra, attached hereto as Exhibit "A" (holding silt, sediment, and rainwater are "pollutants" under the exclusion), Farmer, supra (holding diesel fuel is a "pollutant" under the exclusion); Zippro, supra (holding asbestos is a "pollutant" under the exclusion).  The language of the policy itself expressly states that the "including" list provides merely examples of pollutants and operates only as a partial recitation of all those substances which are excluded from coverage.

Because the dry cleaning chemicals are, by definition, hazardous liquid substances that have contaminated real property, they clearly fall within the definition of "pollutants" under the terms of policies at issue here.

2.   The Dry Cleaning Chemicals Were Discharged, Dispersed, Seeped, Migrated, Released or Escaped.

Although the Turnbull Defendants may contest liability for the presence of chemical contamination on the Minors' Property, the question for purposes of insurance coverage, and the application of the pollution exclusion in particular, is whether the Underlying Lawsuit seeks recovery for property damage arising from the "alleged... discharge, release, escape, seepage, migration or dispersal of pollutants."  Based on the plain language of the complaint filed in the Underlying Lawsuit, it is clear that the damages sought arise from the alleged discharge,

release, escape, seepage, migration or dispersal of pollutants. In fact, the Minor Family specifically alleges that the chemicals originated from the Turnbull Property and "*migrated* and continue to migrate" onto their property.  (Underlying Complaint, ¶ 21.)

The verbs used in the pollution exclusion: discharge, dispersal, seepage, migration, release or escape, broadly contemplate the movement of a pollutant from one location to another.  There is no uncertainty here, however, since the Complaint in the Underlying Lawsuit uses language  - the verb "migrate" - which is specifically contemplated by the pollution exclusion.  Furthermore, this Court has held that where a defined pollutant is transmitted from one location to another, the pollution exclusion applies regardless of the manner in which the hazardous material is transmitted.  Owners Ins. Co. v. Farmer, 173 F.Supp.2d 1330, 1333 (N.D.Ga. 2001.)

Because the Complaint in the Underlying Lawsuit specifically alleges that the hazardous contaminants found on the Minor Family Property migrated from the Turnbull Property, the pollution exclusion applies.

3.   The Discharge Occurred at or from a Premises Owned by the Turnbull Defendants.

The third step in the analysis is the most straightforward. It has been clearly established that, at all relevant times, the

- 13 -

Turnbull Property was owned by Charles Moore, Shelby Moore, and/or Turnbull Associates.  (Deposition of Charles Moore, pp. 10-11; 30(b)(6) Deposition of Turnbull Associates, pp. 7-9, 11-12.)  As a result, the absolute pollution exclusion, specifically the portion of the exclusion which states that the pollutants must have been discharged or released at or from a premises owned by the insured, applies to the claims asserted by the Minors.

Because the three requirements of the pollution exclusion contained in the policies can be satisfied, no coverage is afforded for the Turnbull Defendants under the umbrella policies issued by Auto-Owners.

**B.    No Coverage Is Afforded for Costs Arising from a Demand to Clean Up the Effects of Pollutants.**

Both policies' pollution exclusions also provide that no coverage is afforded for any "loss, cost or expense arising out of any request, demand or order that any insured... test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."  This language been upheld as enforceable by this Court.  Owners Ins. Co. v. Chadd's Lake Homeowners Ass'n, 2006 WL 1553888 *5 (N.D.Ga. 2006).  Moreover, the plain language of the exclusion clearly applies to the facts presented here.

After contamination was discovered on the Turnbull Property, Moore notified the Georgia EPD.  (Turnbull 30(b)(6) Depo., pp. 57-58, 77-78.)  In conjunction with the EPD, Moore and Turnbull Associates undertook efforts to test for, monitor, clean up, remove, contain, treat, and generally respond to and assess the effects of the contamination.  (Id., pp. 80-89.)  Likewise, when contamination was discovered on the adjacent Minor Family Property, remediation efforts were continued in response to the Minor Family's requests that the Turnbull Defendants address the contamination issue.  (Turnbull 30(b)(6) Depo., pp. 129-134.) Notably, Turnbull Associates has moved this Court for permission to file a counterclaim to recover the expenses it incurred in testing for, monitoring, treating, and generally responding to and assessing the effects of the contamination on the Minor Property.  (See Motion to Amend Answer, with proposed Counterclaim, on file with this Court.)

Because the umbrella policies do not afford coverage for any loss, cost or expense arising out of any request, demand or order that an insured, in any way, respond to, or assess the effects of pollutants (which is, at its core, the subject of the Underlying Lawsuit), no coverage is afforded for the Turnbull Defendants under the policies issued by Auto-Owners.

### III. NO COVERAGE IS AFFORDED UNDER THE EXECUTIVE POLICY BECAUSE THE TURNBULL PROPERTY CONSTITUTES BUSINESS PROPERTY.

In addition to exclusions which, in substantially similar form, are contained in both policies, the Executive Umbrella Policy excludes coverage for property damage resulting from "business pursuits or business property". The policy defines "business" as a trade, profession or occupation other than farming; and defines "business property" as property on which on which business is conducted; which rented in whole or in part to others; or which is held for such rental. (See Executive Policy, attached to Boice Affidavit as Exhibits Q-EE.)

The Turnbull Commercial Property clearly constitutes business property. Moore purchased the property in or around 1986. (Moore Depo., p. 10.) At the time of the purchase, and all times since, the property has housed a strip shopping mall of various businesses. (Moore Depo., p. 11.) With specific regard to the portion of property at issue here, the Turnbull Commercial Property housed a dry cleaning business. (Moore Depo., pp. 24-25; Turnbull 30(b)(6) Depo., pp. 14-15) Consequently, the Turnbull Property is property on which on which business is conducted. Additionally, the Turnbull Property, and particularly the portion that houses the dry cleaning business, is property that Moore and Turnbull rented to others. (Turnbull 30(b)(6)

Depo., pp. 14, 93-94.)

For these reasons, it must be concluded that the Turnbull Property is "business property" as defined by the Executive Umbrella Policy. Moreover, all of the claims asserted in the Underlying Lawsuit result from the Turnbull Defendant's business property, and its use as business property. Because no coverage is afforded for property damage resulting from "business property", no coverage is afforded under the Executive Umbrella Policy for the claims asserted in the Underlying Lawsuit.

**IV.  THE TURNBULL DEFENDANTS BREACHED THE CLEAR AND UNAMBIGUOUS NOTICE CONDITION IN THEIR POLICIES WITH AUTO-OWNERS.**

Setting aside the substantive coverage defenses discussed above, both the commercial and executive umbrella policies contain certain procedural conditions precedent to coverage. Although worded slightly differently in each of the policies, the effect and the obligations placed on the insured is the same. Both policies require that, in the event of an occurrence or an incident which is likely to involve Auto-Owners, the Turnbull Defendants have an affirmative obligation to provide notice of the occurrence or incident to Auto-Owners.

Under both policies, proper notice is a communication to Auto-Owners that provides the insured's name and policy number, the time place and circumstances surrounding the occurrence or

incident, and the names and addresses of any injured persons or witnesses.  (See Commercial and Executive Umbrella Policies, attached to the Affidavit of Chris Boice.)  Under the Commercial Policy, notice must be in writing.  (See Affidavit of Chris Boice, Exhibits B-P.)

It is well settled that an unexcused delay in notifying an insurer of a claim, occurrence, or incident relieves the insurer of liability.  Protective Ins. Co. v. Johnson, 256 Ga. 713, 352 S.E.2d 760 (1987).  Where an insurance policy contains a provision requiring the insured to provide notice of an occurrence or incident, such provisions constitute a condition precedent to coverage.  "In the case of a condition precedent, the condition must be performed before the contract becomes absolute and obligatory on the other party."  KHD Deutz of Am. Corp. v. Utica Mut. Ins. Co., Inc., 220 Ga. App. 194, 195, 469 S.E.2d 336, 338 (1996), citing Glass v. Stewart Title Guar. Co., 181 Ga. App. 804, 354 S.E.2d 187 (1987).

An insured is not relieved of its duty to provide timely notice by its own belief that it will not be sued by a third party, or that there is no liability to a third party, or that its policy would not cover the asserted claim.  See, e.g., Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547 (11th Cir. 1993); Acceptance Ins. Co. v. Schafner, 651 F.Supp.

776 (N.D. Ala. 1986).  Moreover, it is not necessary for the
insurer to prove that it has been prejudiced before it can avail
itself of the defense of untimely notice.  Canadyne, supra
(finding Georgia law clear on the issue that an insurer need not
show prejudice) (citations omitted); see also Atlanta Int'l
Properties, Inc. v. Georgia Underwriting Ass'n, 149 Ga. App. 701,
256 S.E.2d 472 (1979); Richmond v. Georgia Farm Bur. Mut. Ins.
Co., 140 Ga. App. 215, 231 S.E.2d 245 (1976).

More than simply serving as a requirement for the insured to
satisfy, as the Georgia Court of Appeals has recognized, notice
conditions serve an important purpose.  Requiring an insured to
provide notice of an occurrence "enable[s] an insurer to
investigate promptly the facts surrounding the occurrence while
they are still fresh and the witnesses are still available, to
prepare for a defense of the action, and, in a proper case, to
determine the feasibility of settlement of the claim."  Richmond
v. Georgia Farm Bur. Mut. Ins. Co., 140 Ga. App. 215, 221-222,
231 S.E.2d 245, 250 (1976) (citations omitted).  Because of the
importance placed on providing prompt notice to an insurer of an
event for which an insured may seek coverage, it is well settled
that an unexcused delay in notifying an insurer of such an event
relieves the insurer of liability when a claim is subsequently
made.  See, e.g., Protective Ins. Co. v. Johnson, 256 Ga. 713,

352 S.E.2d 760 (1987).

The insured cannot rely on unacceptable excuses in an attempt to justify its delayed notification.  For example, an insured is not relieved of its duty to provide timely notice by its own belief that it will not be sued by a third party or that there is no liability to a third party.  Richmond, supra, 140 Ga. App. at 220, 231 S.E.2d 245 at 249.  The insured's potential fault or liability are precisely the issues which the insurer "must have reasonable opportunity to investigate with promptness, and which requires prompt notice of the occurrence."  Id., citing Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc., 132 Ga. App. 714, 717, 209 S.E.2d 6, 9. (1974).  As the Georgia Court of Appeals noted:

> It is immaterial to enforcement of this condition precedent that [the insured] thought those other drivers were the cause of the collision and would be liable for his damages and theirs.  If such common misunderstandings--which are the heart of every litigation dispute--or any other wrong idea germinated in the head of one party could alter such plain contract language as exists in this case, insurance law would be turned on its head.

Cotton States Mut. Ins. Co. v. Hipps, 224 Ga. App. 756, 481 S.E.2d 876 (1997).

Similarly, the insured is not relieved of its duty based on a misunderstanding of the terms of the policy or a belief that the policy would not cover the asserted claim.  "The law requires

much more than ignorance of the terms of a valid insurance contract in order to avoid them." <u>Townsend v. Nat'l Union Fire Ins. Co.</u>, 196 Ga. App. 789, 397 S.E.2d 61, 62 (1990).

In a case similar in concept to the instant notice issue, this Court determined that an insured materially breached the terms of its policy by failing to timely notify its insurance carrier of an occurrence which had the potential to result in a claim. <u>Owners Ins. Co. v. Gordon</u>, United States District Court for the Northern District of Georgia, February 26, 2008, pp. 15-21 (Unpublished Opinion attached hereto as Exhibit B). In a thorough discussion of the notice of occurrence requirement, this Court recognized that, despite being aware of a dispute, the insureds made no effort to timely notify their insurance carrier of the potential occurrence. The Court further recognized that because the notice condition is a condition precedent to coverage under the policy, failure to comply with its terms constitutes a material breach of the policy, relieving the insurer of any duty to afford coverage. (<u>Id</u>., p. 16.)

While the question of whether an insured's delay in providing notice is generally a question for the trier of fact, where a significant delay is unexcused, it may be unreasonable as a matter of law. <u>Townsend v. Nat'l Union Fire Ins. Co.</u>, 196 Ga. App. 789, 397 S.E.2d 61, 62 (1990). Repeatedly, Georgia courts

have held delays in notifying an insurer of an occurrence to be
legally unreasonable, thus excusing the insurer of any
obligations under its policy.  See, e.g., Protective Ins. Co. v.
Johnson, 256 Ga. 713, 352 S.E.2d 760 (1987) (holding that a 17
month delay is unreasonable as a matter of law); Bates v. Holyoke
Mut. Ins. Co., 253 Ga. 697, 324 S.E.2d 474 (1985) (holding that a
43 month delay is unreasonable as a matter of law); Townsend,
supra (holding that a 70 month delay is unreasonable as a matter
of law); Int'l Indem. Co. v. Smith, 178 Ga. App. 4, 342 S.E.2d 4
(1986) (holding that a 52 month delay is unreasonable as a matter
of law); Richmond v. Georgia Farm Bur. Mut. Ins. Co., 140 Ga.
App. 215, 231 S.E.2d 245 (1976) (holding that an eight month
delay is unreasonable as a matter of law).

    Here, the Turnbull Defendants failed to satisfy the
unambiguous notice condition precedent to coverage.  The damages
the Minor Family seeks in the Underlying Lawsuit arise from the
presence of the same hazardous substances that were first
discovered on the Turnbull Property and subsequently on the Minor
Family Property.  (See, generally, Underlying Complaint; Turnbull
30(b)(6) Depo., Exhibit 6.)  Moore was on notice by, at the
latest, a few days after August 1, 2005, that the Turnbull
Property contained contamination.  (Turnbull 30(b)(6) Deposition,
p. 76-77.)  By November 2006, at the latest, Moore was aware that

contamination had been discovered on the Minor Family Property. (Raymond Williams Deposition, p. 33.)

In addition to the common knowledge that the presence of hazardous materials in real property, and the placement of property on the Georgia EPD's Hazardous Site Index is a serious circumstance which may result in a claim, Moore had specific knowledge of the complications of the seepage and migration of hazardous dry cleaning chemicals.  In 2002 or 2003, contamination was discovered at a different site owned by Turnbull.  (Turnbull 30(b)(6) Depo., pp. 53-54.)  That property, located in Stone Mountain, Georgia, also contained a dry cleaning business, also tested positive for the presence of hazardous chemicals, and also triggered Georgia EDP oversight in the testing and remediation efforts.  (Turnbull 30(b)(6) Depo., pp. 52-55.)  Based on this experience, Moore was acutely aware of the potential consequences - and claims - that could arise from the proliferation of hazardous chemicals onto and into real property.

Despite knowledge of contamination on the Turnbull Property by August 2005, and knowledge of identical contamination on the Minor Property in 2006, neither Moore nor any Turnbull personnel provided notice of the contamination to Auto-Owners until May 9, 2008.  (Affidavit of Chris Boice, ¶ 6.)  Moore should have considered the discovery of underground contamination on the

Turnbull Property to be an occurrence or incident triggering the notice provision, in which case notice to Auto-Owners came nearly four years late.  Even giving the Turnbull Defendants the greatest benefit of the doubt, notice was not provided to Auto-Owners until more than a year and a half after Moore became aware that contamination potentially linked to the Turnbull Property had been discovered on the Minor Family Property.

A delay of a minimum of 18 months in providing notice of an occurrence or incident is unreasonable as a matter of law and constitutes a material breach of the terms of the Policies.  As a result, Auto-Owners has no obligation to defend or indemnify the Turnbull Defendants, and this Court should grant Auto-Owners' motion for summary judgment.

This 29th day of August, 2011.

Respectfully submitted,

TALLEY, FRENCH & KENDALL, P.C.

/s Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030

/s Maureen E. Murphy
Maureen E. Murphy
Georgia Bar No. 530990

3152 Golf Ridge Blvd.; Suite 201
Doulgasville, Georgia 30135
Telephone: (770) 577-3559
Facsimile: (770) 577-8113
mckendall@bellsouth.net
memurphy@bellsouth.net

- 24 -

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTO-OWNERS INSURANCE COMPANY,  )
                                )
        Plaintiff,              )
                                )
v.                              )        CIVIL ACTION FILE
                                )        NO. 1:10-CV-03019-SCJ
ROBERT ALSTON MINOR, as         )
Executor of the Estate of       )
HORACE A. MINOR; CHRISTINE      )
MINOR WILLIAMS; REBECCA MINOR,  )
individually and as Executrix   )
of the Estate of John Keith     )
Minor; BRIDGETTE WATTS, as      )
Executrix of the Estate of      )
Hulon L. Minor; SHARON BRIMER,  )
as the Executrix of the Estate  )
of Louise J. Minor; TURNBULL    )
ASSOCIATES, LLLP; CHARLES E.    )
MOORE, JR.; SHELBY ABERNATHY    )
MOORE; and HEREEN PATEL d/b/a   )
VIP CLEANERS, INC.; VIP         )
CLEANERS, INC.,                 )
                                )
        Defendants.             )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **Brief in Support of Motion for Summary Judgment** upon the following parties to this matter by electronically filing the same with the Court via the CM/ECF system, with the Clerk of Court providing notice to the following counsel of record:

Timothy S. Walls, Esq.
MILLS & HOOPES, LLC
1550 North Brown Rd., Ste 130
Lawrenceville, Georgia 30043

Charles E. Moore, Esq.
6701 Yacht Club Drive
Panama City, Florida 32404

Thomas J. Tate, Esq.
Kristie, Johnson, Esq.
ANDERSEN, TATE & CARR, P.C.
One Sugar Centre
1960 Satellite Boulevard
Suite 4000
Lawrenceville, Georgia 30097


This 29th day of August, 2011.


   s/ Maureen E. Murphy
Maureen E. Murphy