IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTO-OWNERS INSURANCE COMPANY,  )
                                )
      Plaintiff,                )
                                )
v.                              )          CIVIL ACTION FILE
                                )          NO. 1:10-CV-03019-SCJ
ROBERT ALSTON MINOR, et al.,    )
                                )
      Defendants.               )

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.   THE POLICIES' POLLUTION EXCLUSIONS PRECLUDE COVERAGE.**

Both of the policies issued by Auto-Owners contain pollution exclusion provisions.  Furthermore, in both policies, the provisions contain two sub-parts.  First, the policies exclude coverage for property damage "resulting from the actual, alleged or threatened discharge, release, escape, seepage, migration or dispersal of pollutants... at or from any premises, site or location which is or was at any time" owned by any insured. Separately, the policies exclude coverage for "[a]ny loss, cost or expense arising out of any... request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants...."

From the outset, it must be noted that Defendants have not addressed the application of the second sub-part, which was relied upon by Auto-Owners.  Auto-Owners reiterates that the

Underlying Lawsuit and the discussions and requests leading up to it constitute a loss, cost or expense arising out of a request that an insured test for, monitor, clean up and otherwise respond to the effects of pollutants.  Both policies exclude coverage for such damages.  Furthermore, Defendants' failure to oppose the application of that provision operates as a concession that the provision applies.  As a result, Auto-Owners seeks a ruling that no coverage is afforded under the policies as a result of the "loss, cost or expense" provision of the pollution exclusion.

Additionally, no coverage is afforded because all damages sought in the Underlying Lawsuit constitute property damage resulting from the alleged release, escape, and seepage of pollutants from a premises owned by an insured.  Defendants oppose the application of this provision of the pollution exclusion, but their argument does not apply here.

Defendants do not contest that the chemicals found on the Minors' property constitute "pollutants" as defined by the policies, nor do they contest that those pollutants escaped, seeped and/or migrated onto the Minors' property from property which they all, at various relevant times, owned.  Because these elements of the pollution exclusion exist and are uncontested, the exclusion should be held to apply.  Nonetheless, Defendants seek to escape the application of the pollution exclusion through reliance on the decision reached by the Georgia Court of Appeals

in <u>Kerr-McGee Corp. v. Georgia Cas. & Surety Co.</u>, 256 Ga. App. 458, 568 S.E.2d 484 (2002).  For a number of reasons, the case is not applicable here.

First and foremost, as Defendants themselves concede, <u>Kerr-McGee</u> is not binding precedent.  Only one justice joined the decision, and, therefore, as the Georgia Court of Appeals itself recognized, "the decision has no precedential value."  <u>Auto-Owners Ins. Co. v. Reed</u>, 286 Ga. App. 603, 606, 649 S.E.2d 843, 845 (2008).  For this reason alone, the case is not applicable. However, even if the case did hold precedential value, it is not relevant to the issues presented here.

The decision in <u>Kerr-McGee</u> concerned the assessment of whether a pollution exclusion, nearly identical to the one at issue here, applied only when defined "pollutants" were discharged into the natural, outdoor environment, or whether it applied when the pollutant at issue was contained within the walls of the facility designed to hold it.  The Court concluded that the pollution exclusion was ambiguous on that issue, but specifically limited the ambiguity to that question: whether the exclusion applied to *all* situations, or only where outdoor, environmental pollution was concerned.

In this case, such an analysis is inapplicable.  The claims in the Underlying Lawsuit allege the contamination of outdoor land.  Even if it could theoretically be accepted, for purposes

of argument, that the pollution exclusion is ambiguous regarding
its application to situations other than environmental pollution,
any such arguable ambiguity would not apply here.  The
allegations asserted in the Underlying Lawsuit concern the
contamination of the Minor Family's outdoor, real property - the
contamination of land and ground water due to the seepage,
migration and release of hazardous chemicals which should have
been contained.  The pollution at issue in the Underlying Lawsuit
is precisely the type of environmental pollution that Kerr-McGee
concedes is contemplated by the absolute pollution exclusion.
Under the support of Georgia law, Auto-Owners asserts that the
pollution exclusion is entirely unambiguous, still any potential
ambiguity identified in Kerr-McGee is irrelevant here because,
even under Kerr-McGee, the exclusion would apply.

       Defendants also attempt to argue that Kerr-McGee suggests
that questions surrounding the source of the pollution may create
an ambiguity.  On this issue, Defendants simply are incorrect.
The Kerr-McGee Court limited its substantive discussion to the
indoor versus outdoor/environmental pollution debate, and reached
its decision based solely on that question.  Not only is any
mention of the source of the pollution dicta, but the mention in
this case is a passing reference, at best.  Defendants quote a
passage in the Kerr-McGee decision which, in part, cites Doerr v.
Mobil Oil Corp., 774 So.2d 119 (La. 2000) and North Am. Specialty

Ins. Co. v. Georgia Gulf Corp., 99 F.Supp.2d 726 (M.D. La. 2000).
Both cases arise out of the state of Louisiana and, therefore,
are not applicable here.  Furthermore, Doerr, like Kerr-McGee,
concerned the indoor versus outdoor pollution question, which is
not at issue here.  Furthermore, the specific passage in Doerr
cited by the Kerr-McGee court was the Doerr court's discussion of
the Louisiana Insurance Commissioner's position on the pollution
exclusion.  See Kerr-McGee, 568 S.E.2d at 487, citing Doerr, 774
So.2d at 133-135.  That discussion is of no relevance to this
Georgia Court's application of Georgia law, especially when
Georgia jurisprudence has clearly established that the pollution
exclusion is unambiguous and would apply here.

Lastly, Defendants omit mentioning that the passage in which
the Louisiana cases were cited opens with a statement asserting,
as an aside, that the Kerr-McGee Court believes that the presence
of three factors may render the pollution exclusion inapplicable:
(1) that the insured did not cause the pollution, (2) that the
pollution did not originate from the insured's property, and (3)
that the pollution was not environmental in nature.  Even if the
passage, which is dicta, was arguably instructive (which it is
not), it does not apply here because, at a minimum, factors (2)
and (3) are not present here.  The pollution at issue originated
from Defendants' property, and the pollution is environmental in
nature As a result, under no plausible reading is the decision in

<u>Kerr-McGee</u>, or the Louisiana cases it cites, applicable here.

Defendants have not identified any binding Georgia law which undermines Auto-Owners' argument: that the absolute pollution exclusion is unambiguous as a matter of law, and that it excludes coverage for the damages alleged in the Underlying Lawsuit.  As a result, Auto-Owners respectfully requests that this Court rule that no coverage is afforded for the damages claimed in the Underlying Lawsuit.

## II.  NO COVERAGE IS AFFORDED UNDER THE EXECUTIVE UMBRELLA POLICY.

Defendants also address the application of the business property exclusion in the Executive Umbrella Policy.  The exclusion provides that no coverage is afforded for property damage resulting from business pursuits or business property. (Exclusion g.)  Defendants do not cite any support for their position, but rather set forth hypothetical questions which do not apply here.

For example, Defendants state that a reasonable insured would believe that, if he was found liable for negligently knocking a can of petroleum on the ground while on business property, but not as a result of any business pursuit, the exclusion would apply.  Although Defendants provide no additional details for assessing the hypothetical situation, it seems likely that the exclusion under such a circumstance would not, in fact,

apply.  The exclusion is limited to damages *resulting from* business pursuits or business property.  If liability was found against the insureds, and there was no causal connection between the damages claimed and the insured's business pursuits or property, then it is not likely that the exclusion would apply.

On the contrary, here, there is a direct and inescapable causal connection between the business property owned by the insureds, and the liability allegations asserted against them. The Underlying Lawsuit alleges that the Minor Family sustained damages because of and resulting from the business pursuits and, specifically, the business property owned by Defendants.  The Minors allege that the damaging chemicals found on their property originated from the business property owned by Defendants.  It is only because Defendants owned the business property at issue that Defendants were sued.  Unlike Defendants' hypothetical question, in this case there is an inextricable causal link between their business property and the claims asserted against them.

Defendants also present hypothetical questions involving automobile accidents, but the exclusion specifically addresses such circumstances.  It is worth mentioning that these hypothetical questions are completely irrelevant here because no damages gave been asserted arising from the use of an automobile. Nonetheless, under the business pursuit and property exclusion, the Executive Umbrella Policy provides, that:

> We do cover such injury or damage [otherwise
> excluded by the business pursuit and property
> exclusion]:
> (1)   caused by private passenger automobiles
>       not used
>       (a)   for public livery;
>       (b)   under lease to others; or
>       (c)   in an automobile sales or repair
>             business of an insured

(Executive Umbrella Insurance Policy, attached to Boice Affidavit as Exhibits Q-EE, Exclusion (g).)

Defendants are correct that the Executive Umbrella Policy does not limit the business pursuit and property exclusion to business property owned by the insured.  However, the coverage at issue is liability insurance coverage.  Subject to its terms and conditions, the Executive Umbrella Policy affords coverage for the insured's alleged liability to a third party.  Consequently, the policy would apply only if damages were sought from the insured based on some connection that the insured had to the damages claimed.  Under such circumstances, the Executive Umbrella Policy makes clear that, where the causal connection between the insured and his alleged liability is his business pursuits or business property, then no coverage is afforded.

Here, as discussed above, the connection between Defendants and the damages sought from them could not be more closely linked to their business property.  It is specifically because of, originating from, and "resulting from" the business property that the Minor Family has asserted claims against Defendants.

- 8 -

The language contained in the business property exclusion is clear and unambiguous.  Defendants have not provided any support for their statement that the provision is ambiguous.  Defendants have not provided two reasonable interpretations of the provision.  Defendants simply have asserted some hypothetical circumstances which either can be dismissed entirely as irrelevant or, at a minimum, illustrate the broad nature of the exclusion.  Because the damages sought against Defendants resulted from their business pursuit and business property, no coverage is afforded under the Executive Umbrella Policy issued by Auto-Owners.

**III. THE MOORE-TURNBULL DEFENDANTS FAILED TO COMPLY WITH THE POLICIES' NOTICE CONDITIONS PRECEDENT TO COVERAGE.**

As Defendants correctly note, the initial question in assessing whether a notice condition under an insurance policy has been satisfied is determining whether and when the duty to notify arose.  Both policies provide specific instruction on this question.  Under the terms of the Commercial Umbrella Policy, an insured must provide notice "[w]hen an **incident** likely to involve **us** takes place..."  (<u>See</u> Commercial Umbrella Policies attached to Boice Affidavit.)  Similarly, under the Executive Umbrella Policy, the insured must notify Auto-Owners "[w]hen an occurrence likely to involve us takes place...."  (<u>See</u> Executive Umbrella Policies attached to Boice Affidavit.)

- 9 -

Georgia law makes clear that notice conditions such as those at issue here are unambiguous and should be applied as written. See, e.g., South Carolina Ins. Co. v. Coody, 957 F.Supp. 234 (M.D. Ga. 1997).  The sole issue presented in Coody concerned whether an insured breached the notice requirement of its policy, relieving the insurer of its duty to defend or indemnify.

The relevant facts in Coody are presented more fully in a prior decision, South Carolina Ins. Co. v. Coody, 813 F.Supp. 1570 (M.D. Ga. 1993).  The facts show that South Carolina Insurance Company sought a declaratory judgment that it had no duty to defend or indemnify its insured, the T.A. McCord, Jr., Trust ("Trust"), under the terms of a comprehensive liability policy issued to the Trust.  South Carolina Ins. Co. v. Coody, 813 F.Supp. 1570, 1571 (M.D. Ga. 1993).  Under the terms of the relevant policy, the Trust had a duty, in the event of an occurrence, to provide written notice of the occurrence "as soon as practicable."  Id. at 1579.  Despite its duty under the policy, the Trust did not provide notice of the pollution which had been occurring for more than three years after it became aware that it may be a liable party.  Id.

The Middle District Court's subsequent decision in 1997 provides a complete analysis of the insurance company's notice argument.  Coody, 957 F.Supp. at 237.  The court began with the recognition that "[c]ompliance with a prompt notice provision

- 10 -

**_acts as a condition precedent to coverage_**." Id. (emphasis
added).  As here, the policy in Coody did not contain full phrase
"condition precedent" when describing the insured's duty, but
"condition precedent" is not magic language.  The policy in
Coody, just as the policies issued to the Moore-Turnbull
Defendants, proscribed an affirmative duty on the insured,
operating as a condition precedent, that in order for coverage to
apply, the insured must comply with the terms of the policy,
including the requirement of providing notice of an occurrence or
incident as soon as practicable.

Defendants have not argued that the notice provision is
ambiguous or that it does not constitute a condition precedent to
coverage under the policies.  Rather, the arguments to which
Defendants devote the most attention is their contention that the
discovery of contaminants on the Minors' Property did not
constitute notice of an incident likely to involve Auto-Owners;
and, further, that they were not aware any lawsuit would be filed
against them.  Neither argument constitutes a valid excuse to the
application of the notice condition or Defendants' obligations
thereunder.

First, Defendants oversimplify the discovery of pollution.
It was not that the Minors simply "found contaminants" on their
property.  The Minors found contaminants which were directly

connected with the operations of a dry cleaning business, which business was located on Moore's property, adjacent to the Minor Property.  (See, generally, Complaint filed in the Underlying Lawsuit.)  The discovery of these contaminants placed the Minors' Property on the Hazardous Site Index maintained by the Georgia Environmental Protection Department, and triggered the immediate involvement of the Georgia EDP.  (Turnbull 30(b)(6) Depo., pp. 57-58, 77-78, 80-89, 123-124; Underlying Complaint, Exhibit F.) As a result, the basis for an alleged connection between the discovered contaminants and Moore's property, and the possibility that the Minors may assert liability claims against Defendants, was apparent from the time of their discovery.

Setting that issue aside, Defendants further attempt to excuse their failure to notify Auto-Owners by contending that the Minors indicated no lawsuit would be filed.  Of course, the Minors *did* file a lawsuit against the Moore-Turnbull Defendants, so any indication that they would not was the result of mistake, intentional misleading, or a changed mind.  Whatever the reason, however, the Moore-Turnbull Defendants were not excused from their obligations under the notice provisions of the policies.

Georgia law also establishes that the erroneous belief by an insured that the he would not be liable or that a lawsuit will not be filed does not excuse the failure to place his insurance carrier on notice of the incident.  See, e.g., Canadyne-Georgia

Corp. v. Continental Ins. Co., 999 F.2d 1547 (11th Cir. 1993);
Coody, supra; Acceptance Ins. Co. v. Schafner, 651 F.Supp. 776
(N.D. Ala. 1986); Richmond v. Georgia Farm Bur. Mut. Ins. Co.,
140 Ga. App. 215, 220, 231 S.E.2d 245, 249 (1976).  As the
Georgia Court of Appeals has held, the insured's potential fault
or liability are precisely the issues which the insurer "must
have reasonable opportunity to investigate with promptness, and
which requires prompt notice of the occurrence." Richmond,
supra, citing Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.,
132 Ga. App. 714, 717, 209 S.E.2d 6, 9. (1974).  The Georgia
Court of Appeals has noted, "[i]t is immaterial to enforcement of
this condition precedent that [the insured] thought those other
drivers were the cause of the collision and would be liable for
his damages and theirs.  If such common misunderstandings--which
are the heart of every litigation dispute--or any other wrong
idea germinated in the head of one party could alter such plain
contract language as exists in this case, insurance law would be
turned on its head." Cotton States Mut. Ins. Co. v. Hipps, 224
Ga. App. 756, 481 S.E.2d 876 (1997).

Defendants seek to escape the application of the notice
provision by relying on Westport Ins. Corp. v. Atchley, Russell,
Waldrop & Hlavinka, L.L.P., 267 F.Supp.2d 601 (E.D. Tex. 2003).
From the outset, it is worth noting that Westport is a decision
from the United States District Court for the Eastern District of

Texas, and applies Texas law.  As a result, it is not binding
precedent here, especially in light of the well-established, on
point precedent which has been developed under Georgia law.

Moreover, and also particularly important, the decision in
Westport does not concern a policy's notice condition; rather, it
concerns an exclusion of coverage for claims based on acts which
occurred prior to the policy.  Westport, 267 F.Supp.2d at 607.
For this reason alone, the case is not applicable here.  See,
e.g., York Ins. Co. v. Williams Seafood of Albany, Inc., 223 F.3d
1253, 1255 (11th Cir. 2000).

Finally, the facts and analysis at issue in Westport reveal
that it is irrelevant here.  Westport concerned a coverage
question arising from the application of an exclusion in a
professional liability insurance policy issued to a law firm.
The type of policy and the necessary inquiry at issue in Westport
distinguish it so significantly from the facts at issue here as
to render the case completely inapplicable.  In Westport, as the
excerpts cited by Defendants reveal, the court was required to
determine whether an attorney was able to recognize that he had
committed a professional breach, and whether that breach could
form the basis of a claim against him.  Such an analysis is
entirely different from whether a reasonable insured in the
position of the Moore-Turnbull Defendants would recognize that
the discovery of hazardous chemicals on another's property,

- 14 -

allegedly arising from their own property, would be an incident
which may ultimately involve their insurance carrier.
(Interestingly, Defendants make special note that the insured in
Westport was an attorney, in attempt to indicate that a greater
burden may have existed in that case than would be applicable
here.  However, the insured here is an attorney himself, and, in
fact, is sufficiently qualified with insurance issues that he is
representing the Moore-Turnbull Defendants in this action.)

    Ultimately, Defendants have provided no support for an
argument that the notice provisions set forth in the policies
would not apply.  Granting Defendants the greatest benefit of the
doubt, they were aware of an incident likely to involve Auto-
Owners no later than November 2006, and, in fact, were likely
aware of the pollution as early as August, or even March 2005.
(Defendants' Response Brief, p. 3; Turnbull 30(b)(6) Deposition,
p. 76-77.)  Nonetheless, no notice was provided to Auto-Owners
until May 9, 2008.  (Boice Affidavit, ¶ 6.)  Defendants' appeal
that the notice came within days of their notice of the filing of
the Underlying Lawsuit is irrelevant, because the policy imposes
a notice obligation on the insureds at the time of the incident,
regardless of when any subsequent lawsuit may be filed.

    Because Defendants failed to comply with the policies'
notice conditions, no coverage is afforded for the damages sought
in the Underlying Lawsuit.

This 8th day of October, 2011.

                               Respectfully submitted,

                               TALLEY, FRENCH & KENDALL, P.C.

                                 /s Michael C. Kendall
                               Michael C. Kendall
                               Georgia Bar No. 414030

                                 /s Maureen E. Murphy
                               Maureen E. Murphy
                               Georgia Bar No. 530990

3152 Golf Ridge Blvd.; Suite 201
Doulgasville, Georgia 30135
Telephone: (770) 577-3559
Facsimile: (770) 577-8113
mckendall@bellsouth.net
memurphy@bellsouth.net

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTO-OWNERS INSURANCE COMPANY, )
                                )
        Plaintiff,              )
                                )
v.                              )        CIVIL ACTION FILE
                                )        NO. 1:10-CV-03019-SCJ
ROBERT ALSTON MINOR, as         )
Executor of the Estate of       )
HORACE A. MINOR;CHRISTINE       )
MINOR WILLIAMS; REBECCA MINOR,  )
individually and as Executrix   )
of the Estate of John Keith     )
Minor; BRIDGETTE WATTS, as      )
Executrix of the Estate of      )
Hulon L. Minor; SHARON BRIMER,  )
as the Executrix of the Estate  )
of Louise J. Minor; TURNBULL    )
ASSOCIATES, LLLP; CHARLES E.    )
MOORE, JR.; SHELBY ABERNATHY    )
MOORE; and HEREEN PATEL d/b/a   )
VIP CLEANERS, INC.; VIP         )
CLEANERS, INC.,                 )
                                )
        Defendants.             )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **Reply Brief in Support of Motion for Summary Judgment** upon the following parties to this matter by electronically filing the same with the Court via the CM/ECF system, with the Clerk of Court providing notice to the following counsel of record:

Timothy S. Walls, Esq.
MILLS & HOOPES, LLC
1550 North Brown Rd., Ste 130
Lawrenceville, Georgia 30043

Charles E. Moore, Esq.
6701 Yacht Club Drive
Panama City, Florida 32404

Thomas J. Tate, Esq.
Kristie, Johnson, Esq.
ANDERSEN, TATE & CARR, P.C.
One Sugar Centre
1960 Satellite Boulevard
Suite 4000
Lawrenceville, Georgia 30097


This 8th day of October, 2011.


   s/ Maureen E. Murphy
Maureen E. Murphy